Michael STRICKLAND, Plaintiff,

v.

The UNITED STATES,

No. 03–1390C.

United States Court of Federal Claims.

Feb. 8, 2006.

John B. Wells, Slidell, Louisana, counsel for Plaintiff.

Matthew P. Reed, United States Department of Justice, Civil Division Commercial Litigation Branch, Washington, D.C., counsel for Defendant, with whom were Assistant Attorney General Peter D. Keisler, Director David M. Cohen, Assistant Director Franklin E. White, and LCDR Gregory R. Bart, JAGC, of counsel.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

On July 30, 2004, the court held that the Assistant Secretary of the Navy violated 10 U.S.C. § 1552(a)(1), when he rejected a Final Opinion of the Board for Correction of Naval Records ("BCNR") recommending correction of Plaintiff's record and three months of constructive service, so Plaintiff could qualify for retirement. *See Strickland v. United States,* 61 Fed.Cl. 443 (2004) (*"Strickland I"*); *see also Strickland v. United States,* 61 Fed.Cl. 689 (2004) (denying Defendant's Motion for Reconsideration).

On September 16, 2005, the United States Court of Appeals for the Federal Circuit reversed, holding that "the Assistant Secretary's decision to overrule the [BCNR's] recommendation was within the power granted to the Secretary [of the Navy, and by delegation to the Assistant Secretary] by Congress in 10 U.S.C. § 1552(a)(1), as properly interpreted." *Strickland v. United States,* 423 F.3d 1335, 1343 (Fed.Cir.2005) (*"Strickland*

II"), *reh'g en banc denied* (Fed.Cir. Dec. 1, 2005). This case was remanded for the court "to determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to law." *Id.*

On remand, the court examined Plaintiff's allegation that the Administrative Discharge Board ("ADB")'s reliance on Military Personnel Manual ("MILPERSMAN") 1910–144, 1910–514, and 1910–518, rather than Department of Defense Directive ("DODDIR") 1332.14 and Secretary of the Navy Instruction("SECNAVINST") 1910.4B, was "plain legal error," because reliance thereon fundamentally changed and lowered the evidentiary burden of proof that must be satisfied to justify involuntary separation, as a result of a civilian conviction. Since established precedent mandates that the DODDIR and SEC-NAVINST take precedent over the MIL-PERSMAN when there is a conflict, the BCNR's and the Assistant Secretary's decisions were legal error and must be set aside as a matter of law. *See Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004) ("The Secretary is obligated not only to properly determine the nature of any error or injustice, but also to take such corrective action as will appropriately and fully erase such error or compensate such injustice ... when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." (quotations omitted)); *Dodson v. United States,* 988 F.2d 1199, 1204 (Fed.Cir.1993) ("The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military."). Therefore, it is premature for the court to adjudicate Plaintiff's remaining allegations that: the Assistant Secretary's May 20, 1999 decision to separate based on a factually erroneous Report by the Chief Naval Personnel and the Assistant Secretary's December 20, 2002 decision to overrule the equitable correction decision of the BCNR were arbitrary and capricious; or Plaintiff's allegation that neither of the Assistant Secretary's May 20, 1999 or December 20, 2002 decisions were supported by "substantial evidence." Likewise, it also would be premature for the court to adjudicate Plaintiff's asserted claims under the Due Process Clause of the Fifth Amendment of the United States Constitution, since they are not ripe. *See Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 345, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (quoting *Tull v. United States,* 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)) (requiring that a court "first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.").

An outline of this Memorandum Opinion and Final Order follows:

FACTUAL BACKGROUND ................................................... 688
PROCEDURAL HISTORY .................................................. 689
 A. The Case Review Committee Proceedings. ............................. 689
 B. The Administrative Discharge Board Proceedings. ........................ 690
 C. The Chief Of Naval Personnel's Report To The Assistant Secretary. ........... 693
 D. Plaintiff's Injunction Action In The United States District Court For The
 Southern District Of Mississippi. ....................................... 694
 E. Plaintiff's Appeal To The United States Court Of Appeals For The Fifth
 Circuit. ............................................................. 695
 F. The Board For The Correction Of Naval Records Proceedings And Final
 Decision Of The Assistant Secretary. ................................... 695
 G. Plaintiff's Complaint In The United States Court Of Federal Claims. .......... 696
DISCUSSION ........................................................... 697
 A. Jurisdiction. ......................................................... 697
 B. Justiciability. ........................................................ 698
 C. Standard Of Decision. ................................................. 698
 1. On A Motion For Judgment On Administrative Record. ................. 698
 2. The Board For Correction Of Naval Records And Assistant Secretary
 Are Required To Correct "Plain Legal Error." ....................... 699

D. The Applicable Statute And Regulations In This Case. . . . . . . . . . . . . . . . . . . . . . . .699
 1. Congress Required The Secretary Of Defense And The Service
 Secretaries To Proscribe Standards For Administrative Separation. . . . . .699
 2. Three Sets Of Regulations Have Been Promulgated, Pursuant To 10
 U.S.C. § 1169, Governing Administrative Separation. . . . . . . . . . . . . . . . . .699
 a. Department Of Defense Directive ("DODDIR") Governing
 Administrative Separation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .699
 b. Secretary Of The Navy Instruction ("SECNAVINST") Governing
 Administrative Separation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .700
 c. Military Personnel Manual ("MILPERSMAN") Articles Govern-
 ing Administrative Separation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .701
E. The Court's Resolution Of The Parties' Cross–Motions For Judgment On
 The Administrative Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702
 1. Requirements Of DODDIR 1332.14 And SECNAVINST 1910.4B. . . . . . . . .702
 2. MILPERSMAN 1910–144, 1910–514, And 1910–518 Are Contrary To
 And In Substantive Conflict With The Requirements Of DODDIR
 1332.14 And SECNAVINST 1910.4B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .703
 3. As A Matter Of Law, The Substantive Decisions Of The Administra-
 tive Discharge Board, The Board For Corrections Of Naval Rec-
 ords, And The Assistant Secretary Were Erroneous. . . . . . . . . . . . . . . . . . .705
 a. As A Matter Of Law, The Administrative Discharge Board's
 Reliance On An Application Of MILPERSMAN 1910–144,
 1910–514, 1910–518 Was Plain Legal Error. . . . . . . . . . . . . . . . . . . . . .705
 b. As A Matter Of Law, The Board For Corrections Of Naval
 Records' Failure To Correct The "Plain Legal Error" Of The
 Administrative Discharge Board Was Erroneous. . . . . . . . . . . . . . . . . .706
 c. As A Matter Of Law, The Assistant Secretary's Failure To
 Correct The "Plain Legal Error" Of The Board For
 Corrections Of Naval Records Was Erroneous. . . . . . . . . . . . . . . . . . . .709
 i. The Error "Substantially Affected" The Decision To
 Involuntarily Separate Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . .709
 ii. The Error Is Not Amenable To Harmless Error Analysis. . . . . . . . .710
CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .712

## FACTUAL BACKGROUND [1]

Plaintiff was a Petty Officer in the United States Navy who entered into active duty on May 4, 1982. *See* AR at 3. On March 30, 1998, while assigned to the USS Spruance, Plaintiff was arrested by the Jacksonville, Florida, police and charged with a felony offense in violation of Fla. Stat. § 800.04. *See*

AR at 4–8, 398. Plaintiff disputed the charges. *See* AR at 4, 12, 73.

Plaintiff promptly sought the advice of the Navy Legal Officer assigned to the USS Spruance,[2] who, in turn, discussed the situation with Plaintiff's Commanding Officer. Plaintiff's Commanding Officer advised the Navy Legal Officer that if Plaintiff was found guilty of a felony, Plaintiff would be pro-

---

1. The relevant facts and procedural history recited herein were derived primarily from the June 4, 2003 Administrative Record ("AR"). In addition, other references herein are made to: the June 6, 2003 Complaint ("Compl."); the Government's June 15, 2004 Motion for Judgment Upon the Administrative Record ("Gov't Mot."); Plaintiff's February 24, 2004 Opposition to the Government's Motion and Cross Motion for Judgment on the Administrative Record ("Pl.Opp."); the Government's May 6, 2004 Reply and Opposition ("Gov't Reply"); and Plaintiff's June 2, 2004 Reply ("Pl.Reply"). The court's resolution of the case on the grounds that the Assistant

Secretary exceeded his statutory authority did not require an inquiry into the underlying merits of Plaintiff's case. Because of the different legal issues presented on remand, the factual background and procedural history are significantly expanded from *Strickland I.*

2. This Navy Legal Officer was not an attorney. *See* AR at 587 ("I served as the Ordnance Officer of the USS SPRUANCE (DD 983) from Jan 1997 to Dec 1998. Although I am not an attorney, one of my assigned duties was to serve as the ship's Legal Officer.")

cessed for separation. *See* AR at 587–88. On the other hand, if Plaintiff should plead guilty to a misdemeanor, he would not be processed for separation. *See* AR at 4 (quoting sworn declaration of the USS Spruance's Legal Officer). The Navy Legal Officer then visited the local Trial Services Office,[3] where he was advised that the Navy was unlikely to institute a separation action over a misdemeanor. *See* AR at 4. The Navy Legal Officer advised Plaintiff's Commanding Officer of this information. *Id.* Plaintiff's Commanding Officer then ordered the Navy Legal Officer to talk to Plaintiff. *Id.* Subsequently, the Navy Legal Officer advised Plaintiff that his Commanding Officer "would not seek separation or court-martial for a no contest plea to a misdemeanor." AR at 5. Plaintiff decided to consult a civilian attorney and was advised that the total cost of a trial would be approximately $7,500.00 to $10,000.00 and, if convicted, Plaintiff would be incarcerated as a felon. *See* AR at 7, 93, 226.

On July 10, 1998, Plaintiff pled *nolo contendere* to a misdemeanor violation of Fla. Stat. § 800.03, with adjudication withheld. *See* AR at 5. Thereafter, Plaintiff was sentenced by a Florida state court judge to twelve months probation, fined $1,000.00, and ordered to perform fifty hours of community service and undergo a psychological evaluation. *See* AR at 5, 224–25, 397–403.

## PROCEDURAL HISTORY

### A. The Case Review Committee Proceedings.

On October 6, 1998, the Case Review Committee of the Navy Family Advocacy Program at Naval Station Mayport, Florida convened a hearing to consider Plaintiff's *nolo contendere* plea, even though the record evidences that the Case Review Committee was not certain that it had jurisdiction over this matter. *See* AR at 229 ("Initial discussion among the members pointed out that the family involved was not Navy and GM1 has no children. This caused a question as to the jurisdiction of FAP in this case."); *see also* AR at 256 (section from OPNAVINST 1752.2, the regulation governing the Case Review Committee, defining Child Abuse as, "The physical injury, sexual abuse, emotional abuse, deprivation of necessities, or other abuse of a child *by a parent, guardian, employee of a residential facility or any person providing out-of-home care, who is responsible for the child's welfare,* under circumstances that indicate the child's welfare is harmed or threatened."(emphasis added)); AR at 393. The Case Review Committee reviewed Plaintiff's arrest and booking report, the court-ordered psychological evaluation, and an interview with Plaintiff. *See* AR at 394. The Case Review Committee voted unanimously to "substantiate"[4] the case

3. The Trial Service Office's "mission is to support the operational readiness of the Department of the Navy assets in the Southeastern United States by the provision of responsive, timely and accurate legal guidance, support services and training in the areas of military justice and administrative law." *See* Trial Service Office Southeast, Mission, *available* *at* http://jag.navy.mil/html/TSOSouthEastbody.htm (last visited Jan. 31, 2006). The Command Services section provides, "Administrative Separation advice and assistance in all aspects of the Administrative Separation process including providing Recorder in appropriate cases." *Id.*

4. "Substantiate" is one of three possible determinations the Case Review Committee may reach regarding a particular case:

Possible determinations include substantiated, unsubstantiated, and suspected as follows:

a. *Substantiated.* A case that has been investigated and the preponderance of available information indicates that abuse has occurred. This means that the information that supports the occurrence of abuse is of greater weight, or more convincing than the information that indicates that the abuse and/or neglect did not occur. (This includes cases where abuse is substantiated, however, the offender is unknown.)

b. *Unsubstantiated.* A case that has been investigated and the available information is insufficient to support the allegation of child abuse and/or neglect or spouse abuse.

(1) *Unsubstantiated, Did Not Occur.* A case is ruled unsubstantiated, did not occur, that has been investigated and the allegation of abuse and/or neglect is unsupported. The family needs no family advocacy services.

(2) *Unsubstantiated, Unresolved,* that has been investigated and the available information is insufficient to support the allegation of abuse and/or neglect. Referral to family support services may occur.

c. *Suspected.* A case determination pending further investigation. Duration for a case to be "suspected" and under investigation should

against Plaintiff, because "something happened." AR at 229 ("In the end, members decided that they were not sure what had happened. However, they felt 'something happened.' So, they believed their guidance to be clear, if a child was a victim of indecent exposure (although inadvertent) then there was reason for separation. The vote was unanimous that GM1 Strickland should be processed for separation").

On October 14, 1998, the Commanding Officer of the Naval Station, Mayport, Florida, with cognizance over the Case Review Committee, sent a letter to Plaintiff's Commanding Officer advising that the Case Review Committee "substantiated" the case against Plaintiff and recommended administrative processing. *See* AR at 393–96. The letter contained two enclosures: a Statement of Rights and a Command Response Letter. *Id.* The October 14, 1998 letter requested that Plaintiff's Commanding Officer respond by returning the Command Response Letter indicating either: (a) concur; (b) request additional information; or (c) not concur. *Id.* In addition, the letter requested that Plaintiff's Commanding Officer inform Plaintiff of the information contained in an attached Statement of Rights. *Id.* The Administrative Record, however, contains no indication whether Plaintiff's Commanding Officer completed or returned the Command Response Letter. The Administrative Record also contains no indication that Plaintiff's Commanding Officer informed Plaintiff of the Case Review Committee's substantiation or of the information contained in the Statement of Rights. A copy of this letter also was forwarded to the Navy Personnel Command. *Id.*

After receiving the October 14, 1998 letter, Plaintiff's Commanding Officer sought an opinion from a Command Services attorney assigned to the local Trial Services Office. *See* AR at 6–7. The Command Services attorney informed the Commanding Officer that an administrative separation processing was mandatory in Plaintiff's case, contrary to the Plaintiff's Commanding Officer's original belief that the decision of whether adminis-

trative action should be taken against Plaintiff was solely within his discretion. *Id.; see also* AR at 592 ("Sometime later I received a letter from the local Navy Family Advocacy Program office recommending I take administrative action against Petty Officer Strickland. I then sought an opinion [. . .] from a Command Services attorney at the local Trial Service Officer, who informed me that administrative processing was mandatory in cases of deviant sexual behavior, to include 'indecent exposure,' such as that to which Petty Officer Strickland pled no contest. Therefore, I sent Petty Officer Strickland to an administrative board.").

On October 30, 1998, Plaintiff was informed in writing that he was being processed for Administrative Separation, pursuant to the Military Personnel Manual ("MILPERSMAN") 1910–142 (Misconduct–Commission of a Serious Offense) and 1910–144 (Misconduct–Civilian Conviction). *See* AR at 7, 222–23. The Administrative Separations Processing Notice, however, did not state the factual circumstances on which the proposed action was based or reference the applicable provision of Secretary of the Navy Instruction ("SECNAVINST") 1910.4B. *See* AR at 222–23. This notice, however, informed Plaintiff of the right to a separation proceeding before an Administrative Discharge Board ("ADB"), which Plaintiff elected to exercise. *Id.*

### B. The Administrative Discharge Board Proceedings.

On December 10, 1998, an Administrative Discharge Board ("ADB") was convened to conduct separation proceedings. *See* AR at 338–47. The Senior Member of the ADB advised Plaintiff that: "This Board has been convened for the purpose of considering pertinent facts relating to the case of GM1 MICHAEL D. STRICKLAND, USN, [SSN], who is being processed for administrative separation by reasons of misconduct—commission of a serious offense and misconduct—civilian conviction. The Board *will make findings of fact for each reason* and will make a recommendation with respect to

---

not exceed 60 days from the first report of abuse or neglect.

OPNAVINST 1752.2A (underline in original); *see also* AR at 255–56.

final action of retention, separation or suspension and to characterization of service or description of separation." *See* AR at 339 (emphasis added).

Both the Recorder[5] and Plaintiff's counsel[6] made brief opening statements. *See* AR 340–41. The Recorder did not call any witnesses, but introduced seven exhibits in support of Plaintiff's separation. *See* AR at 341–42. The ADB Record includes Exhibits 1–3.[7] Exhibits 4–7 are missing from the ADB Record. The transcript, however, provides the Recorder's description of Exhibits 4–7:

> **Exhibit 4:** Since we have two members here that who [sic] have never been on Admin Boards, I just wanted to explain the process to you in a little detail. What I did was copy the relevant parts of the MILPERSMAN so it will self explain, but I'd like to go over it a little bit. Separation by reason of misconduct, that's where we are here. If you note under the policy it says NOLO contender. No contest pleas, member is being separated based on that. On the next page of that mandatory processing, the command doesn't have a choice, they must process this person ... Next exhibit is
>
> **Exhibit 5:** *The findings and recommendations, basically what we do in the Admin Board. First, make the decision whether the event occurred or not. We're not going to go into the facts of the case because he plead no contest by the standards of the MILPERSMAN we find mis-*

conduct, *so that's the decision that has to be made.* Next decision that you have to make is whether or not to separate or retain. To determine that we have the next exhibit which is

> **Exhibit 6:** Which are the factors that you consider for retention or separation, seriousness of the offense, the likeliness of recurring, potential of further service, and the member's military record. In the event that you do determine that you would like to separate the accused, I provided
>
> **Exhibit 7:** That goes over the policies of what to consider for the characterization of separation. That step is only necessary, you don't need to look at that step unless you decide to separate him.

AR at 341–42 (bold in original) (emphasis added).

The ADB Record evidences that the Recorder did not provide the ADB with a copy of Plaintiff's court-ordered psychological evaluation, the Commanding Officer of the Naval Station Mayport, Florida's October 14, 1998 letter, Fla. Stat. § 800.03, or any portion of the Manual for Courts–Martial, specifying whether a punitive discharge is authorized for a violation of Fla. Stat. § 800.03 or a closely related offense. *See* AR at 338–92.

Plaintiff's military counsel presented three witnesses and introduced seven exhibits in support of retention. *See* AR at 342–44, 352–92. Notably, Plaintiff's Exhibit E—FAC-

---

5. The Recorder is responsible for presenting the Government's case in support of separation.

6. The Respondent has a right to be represented by an attorney qualified under Article 27(b) of the Uniform Code of Military Justice. *See* 10 U.S.C. § 827(b) ("Trial counsel or defense counsel detailed for a general court-martial-(1) must be a judge advocate who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and (2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member."); *see also* SECNAVINST 1910.4B, Encl. 2, Part 4, ¶ C.1.f ("[N]on-lawyer counsel may not represent a respondent before an Administrative Board unless (1) the respondent expressly declines ap-

pointment of counsel qualified under Article 27(b)(1) of the UCMJ[.]").

7. *See* AR 348 (Exhibit 1–ADB Appointment Letter), AR 349–50 (Exhibit 2–Plaintiff's Administrative Separation Processing Notice), AR 351 (Exhibit 3–Civil Court Case Report and Order Placing Defendant on Probation). Exhibit 3 states that Plaintiff was arrested for "1(F) Lewd and Lascivious Acts," but plead no contest/adjudication of guilty withheld to "IND EXP 800–03." *Compare* AR at 224 (Civil Court Case Report) *with* AR at 225 (Order Placing Defendant on Probation). Exhibit 3 also indicates that Plaintiff's sentence did not include confinement. Exhibit 3, however, contains no explanation of the charge to which Plaintiff plead *nolo contendere* other than "IND EXP 800–03," or any details regarding the allegation or facts leading to Plaintiff's arrest.

TORS IN RETENTION OR SEPARATION is also missing from the ADB Record. *Id.* Although Plaintiff's military counsel indicated during opening argument that Plaintiff would testify, the ADB Record also contains no indication whether Plaintiff actually testified. *See* AR at 341. At the conclusion of Plaintiff's case, the Recorder waived closing argument. *See* AR at 344. Following closing argument by Plaintiff's military counsel, the ADB closed for deliberation. *Id.*

After closed deliberation, the ADB unanimously determined that a preponderance of the evidence *did not* support a finding of Misconduct–Commission of a Serious Offense. *See* AR at 344–45 (emphasis added). Although the ADB Record indicates that the vote regarding Misconduct–Civilian Conviction was also unanimous, the "Findings Sheet" contains an X in both the block indicating that the evidence supports Misconduct–Civilian Conviction, and in a second block indicating that the evidence does not

support Misconduct–Civilian Conviction. *See* AR 218–19. The Findings Sheet also indicates that the "board was bound by MILPERSMAN 1910–518." *Id.* The Findings Sheet states, as follows:

> SM: This Board will close for deliberations.

> NOTE: When the Board deliberates only the voting members will be present.

> (The board comes to order at 1156, 10 December 1998, Trial Services Office, Court Room # 2, Mayport, FL. All members are present.)

> SM: This board will come to order. This Administrative Board has concluded its deliberations (List all reasons for processing). With respect to the following reasons for separation;

> (1) Misconduct—Commission of a serious offense

> (2) Misconduct—Civilian Conviction

**Findings:**

| By a vote of... | The preponderance of evidence... | | Reason number... |
| | Supports | Does Not Support | |
| --- | --- | --- | --- |
| 3 0 | | X | (1) Misconduct—Commission of a Serious Offices[sic] |
| *3 0* | *X* | X | *(2) Misconduct—Civilian Conviction* |
| | | | (3) |
| | | | (4) |

Specific evidence considered relating to acts, omissions, or circumstances alleged in the Letter of Notification include:

All exhibits concerning basis for separation *board was bound by MILPERSMAN 1910–518.*

**Recommendations (Separation or retention):**

| By a vote of... | Supports reason number... | For (retention, separation, or suspended separation for ( ) months)... |
| --- | --- | --- |

AR at 218–19 (bold and underline in original) (emphasis added). The ADB Record provides no explanation for the conflicting findings regarding "Misconduct–Civilian Conviction."

### C. The Chief Of Naval Personnel's Report To The Assistant Secretary.

On December 22, 1998, Plaintiff's Commanding Officer "favorably endorsed the ADB report and ... strongly recommended [Plaintiff's] retention, characterizing him as a 'valuable asset' ... and noting that he was one of the finest Range Masters in the Navy." See AR at 337. On April 1, 1999, Plaintiff's Commanding Officer also advised the Navy Personnel Command that: Plaintiff's ADB recommended retention; he concurred with the ADB's recommendation; the "administrative flag" on Plaintiff's record had been removed; and Plaintiff had been reassigned on January 25, 1999. See AR at 207. On April 5, 1999, Plaintiff's Commanding Officer forwarded the ADB Record to the Bureau of Naval Personnel, recommending retention and specifically noting that the ADB found that the evidence did not support misconduct by a preponderance of the evidence. See AR at 335 ("e. Findings of the Administrative Board: **Does Not Support Preponderance of Evidence.**" (emphasis in original)).

On May 12, 1999, the Chief of Naval Personnel forwarded the ADB Record to the Assistant Secretary for Manpower and Reserve Affairs ("Assistant Secretary"), but incorrectly reported that "[a]n administrative board found GM1 Strickland committed misconduct due to a civilian conviction and recommended retention. His Commanding Officer concurs. CHNAVPERS does not concur. This case is forwarded per reference (a) recommending separation." AR at 332. The ADB Administrative Record contains no indication that, prior to forwarding the ADB Record to the Assistant Secretary, the Chief of Naval Personnel made any inquiry about the obvious discrepancies on the ADB "Findings Sheet." Moreover, the ADB Administrative Record contains no indication that the Chief of Navy Personnel attempted to reconcile Plaintiff's Commanding Officer's statement that the ADB did not find misconduct. Instead, the Chief of Naval Personnel advised the Assistant Secretary that Plaintiff's Commanding Officer concurred in the ADB's finding of misconduct, when that was not accurate. In addition, the Chief of Naval Personnel's Report to the Assistant Secretary also mischaracterized the evidence presented to the ADB. Compare AR at 332 (discussing specific factual information in paragraph 2, not provided to the ADB), with AR at 11 ("It appears that the drafter of this memorandum, an individual in the Enlisted Performance Branch (Pers 832) of NAVPERSCOM, utilized the copy of the letter dated 14 October 1998 from the [Commanding Officer] of COMNAVSTA Mayport to the [Commanding Officer] of Spruance that was sent to Pers–661."); see also AR at 146 ("This was a matter of concern to me because that report was not part of the administrative discharge board (ADB) proceedings in [Plaintiff's] case"). Nevertheless, the Chief of Naval Personnel's Report recommended that the Assistant Secretary approve Plaintiff's administrative separation. See AR at 332 ("Recommend you approve the administrative separation of GM1 Strickland for misconduct due to civilian conviction with characterization of service as General (Under Honorable Conditions).").

On May 20, 1999, the Assistant Secretary approved Plaintiff's administrative discharge with a characterization of General (Under Honorable Conditions). Id. The Administrative Record does not indicate whether the Assistant Secretary knew of any errors in the Chief of Naval Personnel's Report.

### D. Plaintiff's Injunction Action In The United States District Court For The Southern District Of Mississippi.

On June 24, 1999, prior to being discharged, Plaintiff filed an action in the United States District Court for the Southern District of Mississippi to enjoin the administrative separation proceeding. *See* AR at 632. On June 24, 1999, Plaintiff filed a Motion for a Temporary Restraining Order. On June 25, 1999, the United States District Court granted Plaintiff's Motion and ordered that the Government show cause why a preliminary injunction should not be issued during the pendency of Plaintiff's case. *Id.*

On July 6, 1999, the United States District Court convened a preliminary hearing at which the Senior Member of the ADB testified as follows:

PLAINTIFF'S COUNSEL: What basically are the responsibilities of the senior member of the admin board?

SENIOR MEMBER: As senior member—I think to make sure the rules and regulations are followed and to fill in the paperwork at the end.

PLAINTIFF'S COUNSEL: Okay. At the administrative board itself, can you just give us a brief description of the proceedings, please?

SENIOR MEMBER: The cases are both presented, prosecution and defense, and the members vote as to their findings and then announce them to the board.

\* \* \* \* \* \*

PLAINTIFF'S COUNSEL: I'm sorry. In this particular case, what were the original findings announced?

SENIOR MEMBER: *The original findings that we announced were that found no misconduct for the civil conviction or for commission of a serious offense. That's originally what we announced.*

PLAINTIFF'S COUNSEL: Okay. Now, its on the paperwork that you signed and if you need to refresh your memory, let me know. They had no misconduct checked and also misconduct checked. Can you explain how this came about?

SENIOR MEMBER: *When we announced the original findings the—I think*

the government lawyer immediately asked for a recess and had everyone leave the room. And he and the defense lawyer, basically, approached the board, and drew our attention to the fact that in the material that had been presented to us was a [N]avy instruction that required us to find—to find guilt for civil conviction based on the fact that Petty Officer Strickland had entered a no contest plea to the charges against him in Jacksonville.

\* \* \* \* \* \*

PLAINTIFF'S COUNSEL: Okay. Is it fair to say that your original findings were for no misconduct on both; is that correct?

SENIOR MEMBER: Yes.

PLAINTIFF'S COUNSEL: Okay. Now Commander, this discussion that you had during the recess, was that on the record or off the record?

SENIOR MEMBER: I can't remember if the [R]ecorder was in the room or not. I think it was an off the record—I can't remember, though.

PLAINTIFF'S COUNSEL: Okay

SENIOR MEMBER: I think everyone left and just the lawyers stayed.

\* \* \* \* \* \*

PLAINTIFF'S COUNSEL: At the [A]dministrative [D]ischarge [B]oard could you—if you could very briefly give us an idea of the nature of the evidence that was presented against Petty Officer Strickland?

SENIOR MEMBER: *To the best of my memory and I haven't reviewed anything since the [B]oard was held, the government basically didn't present a lot of anything. We knew what the charge had been, and other than his service record and some instructions—navy instructions—there really was no presentation. No police report, no police officer. The accuser was not there. Nothing like that was presented.*

PLAINTIFF'S COUNSEL: Were there any factual witnesses presented at all?

SENIOR MEMBER: Not to my memory, no.

PLAINTIFF'S COUNSEL: The—

SENIOR MEMBER: Other than Petty Officer Strickland.

PLAINTIFF'S COUNSEL: The-once-what was the [B]oard's feeling as far as whether or not Petty Officer Strickland should be retained?

SENIOR MEMBER: He had a good service record and he got on the stand and swore that he hadn't done anything wrong and we saw nothing to contradict that, so, and based on what was presented to us.

PLAINTIFF'S COUNSEL: Was this feeling that he should be retained because of the convening authority's thoughts or the ship's thoughts or independent of that?

SENIOR MEMBER: It was independent of that. It was based on what was presented to us and his service record and his testimony.

See AR at 525–31 (emphasis added).

Significantly, neither the Chief of Naval Personnel nor the Assistant Secretary had any knowledge of these facts at the time they recommended and approved Plaintiff's separation.

At the conclusion of the hearing, the United States District Court advised the parties that they could submit written affidavits from witnesses that could not appear at the July 6, 1999 hearing or others that were difficult to locate. See AR at 583. In response, the Government submitted affidavits from Plaintiff's Commanding Officer and the Navy Legal Officer consulted by Plaintiff prior to pleading *nolo contendere*. See AR 587–93; see also supra n. 2. The July 31, 1999 Affidavit from Plaintiff's Commanding Officer stated:

11. The administrative board considered two grounds for separation: Misconduct due to Commission of a Serious Offense and Misconduct due to Civilian Conviction. *The administrative board found no misconduct* as to Commission of a Serious Offense, but did find misconduct as to the Civilian Conviction. However, the board recommended retention.

12. I agreed with the administrative board's recommendations, and forwarded

the report to the Bureau of Naval Personnel with a favorable endorsement.

See AR at 592–93 (emphasis added). The Affidavit, however, did not address the inconsistencies in the ADB Record. *Compare* AR at 335 ("e. Findings of the Administrative Board: **Does Not Support Preponderance of Evidence**." (emphasis in original)) *with* AR at 593 (indicating "but did find misconduct as to the Civilian Conviction").

On January 14, 2000, the United States District Court denied Plaintiff's Motion for Preliminary Injunction and dismissed the Complaint, with prejudice. See AR at 11, 46; see also Strickland v. Danzig, No. 1:99–CV–242–GR (S.D.Miss. Jan. 14, 2000) (order denying preliminary injunction) ("Moreover, Plaintiff can be returned to his position through the actions of the BCNR or a reviewing court.").

On February 3, 2000, Plaintiff was discharged from the Navy. See AR at 11.

**E. Plaintiff's Appeal To The United States Court Of Appeals For The Fifth Circuit.**

On February 11, 2000, Plaintiff timely filed an appeal of the United States District Court's January 12, 2000 Order. On October 9, 2000, the United States Court of Appeals for the Fifth Circuit dismissed the appeal on jurisdictional grounds, determining only that Plaintiff had not exhausted administrative remedies before the BCNR. See Strickland v. Danzig, 235 F.3d 1339 (5th Cir.2000), cert. denied, 532 U.S. 1051, 121 S.Ct. 2191, 149 L.Ed.2d 1023 (2001).

**F. The Board For The Correction Of Naval Records Proceedings And Final Decision Of The Assistant Secretary.**

On October 24, 2001, following the direction of the United States Court of Appeals for the Fifth Circuit, Plaintiff petitioned the BCNR to set aside the Assistant Secretary's separation determination and requested restoration to active duty, back pay, allowances, and a correction of service record to remove any reference to the discharge. See AR at 60–91.

On October 10, 2002, the BCNR issued a Final Opinion, Docket No. 8202–01, determining that Plaintiff's contentions of legal error were without merit, but concluded that Plaintiff's discharge was "unfair" and should be set aside. *See* AR at 17 ("[T]he Board believes that although counsel's contentions of legal error have no merit, Petitioner's discharge was unfair and should be set aside."); AR at 23 ("The Board is especially sensitive to the unfairness of the situation given the circumstances surrounding Petitioner's case."). The BCNR determined that Plaintiff should be awarded three months constructive service to qualify him for the benefits of retirement. *See* AR at 22–23. In making this correction, the BCNR was clearly persuaded by the overall unfairness of Plaintiff's discharge, particularly in light of assurances made by Plaintiff's Commanding Officer that he would not be processed if he pled *nolo contendere* to a misdemeanor charge. *See* AR at 20–23 ("[T]he Board nevertheless concludes that *Petitioner's discharge was fundamentally unfair* because of the assurances he received that if he pled guilty to a misdemeanor, he would not be processed for discharge.") (emphasis added). Accordingly, the BCNR concluded that these assurances prejudiced Plaintiff's ability to defend against the allegations. *Id.* The BCNR also was influenced by the fact that Plaintiff had an unblemished record of nearly eighteen years of service to the Navy and was close to retirement at the time of his discharge. *See* AR at 21–22.

Specifically, BCNR's October 10, 2002 Final Opinion ordered:

a. That [Plaintiff's] naval record be corrected to show that [Plaintiff] was not discharged on 3 February 2000 but continued to serve without interruption on active duty.

b. That the record be further corrected to show that on 11 March 1998, [Plaintiff] extended his enlistment for a period of three months.

c. That the record be further corrected to show that [Plaintiff] transferred to the Fleet Reserve in the rate of GMG1 on the date he first became eligible for such action.

d. That any material or entries inconsistent with or relating to the [BCNR's] recommendation be corrected, removed or completely expunged from [Plaintiff's] record and that no such entries or material be added to the record in the future.

e. That any material directed to be removed from [Plaintiff's] naval record be returned to the [BCNR], together with a copy of [the BCNR's] Report of Proceedings, for retention in a confidential file maintained for such purpose, with no cross reference being made a part of [Plaintiff's] naval record.

AR at 21–22.

Nevertheless, on December 20, 2002, the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary") overruled the BCNR and denied Plaintiff's Petition for back pay and retirement status explaining:

The BCNR concluded that petitioner's discharge was unfair because he had been mistakenly assured by his command that he would not be processed for discharge if he pled guilty to a misdemeanor. I disagree that this constitutes an error or injustice warranting relief. The command had no authority to extend such assurances. In addition, *given the circumstances surrounding the incident, I am not persuaded that the command's erroneous assurances were the motivating factor in petitioner's decision not to contest the charges.*

In light of these circumstances, I find no error or injustice warranting relief. The petition is denied.

AR at 24 (emphasis added).

### G. Plaintiff's Complaint In The United States Court Of Federal Claims.

On June 6, 2003, Plaintiff filed a Complaint in the United States Court of Federal Claims seeking: restoration to active duty, with all pay and allowances retroactive to the date of discharge; retirement pay from the date of his eligibility for retirement; and other relief. *See* Compl. at Prayer.

On January 15, 2004, the Government filed a Motion for Summary Judgment Upon the

Administrative Record. On February 24, 2004, Plaintiff filed a Cross–Motion for Summary Judgment on the Administrative Record. On May 5, 2004, the Government filed an Opposition to Plaintiff's Cross–Motion for Summary Judgment on the Administrative Record. On June 2, 2004, Plaintiff filed a Reply to Defendant's Opposition to Plaintiff's Cross–Motion for Summary Judgment on the Administrative Record.

## DISCUSSION

### A. Jurisdiction.

The Tucker Act conveys "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, in order to pursue a substantive right, Plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998).

In the context of involuntary separation cases, such as this one, "the applicable money-mandating source is the Military Pay Act, 37 U.S.C. § 204 (2000)." *Roth,* 378 F.3d at 1384 (citing *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003) (*en banc*)); *see also Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995) ("Prior to his retirement, Adkins was entitled to basic pay as

'a member of a uniformed service who is on active duty.' 37 U.S.C. 204(a)(1) (1988). If his discharge was involuntary and improper, Adkins' statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction."). The Military Pay Act provides that "a member of the uniform service who is on active duty ... [is] entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204. If it is found that separation from one of the armed services was improper, then the entitlement to be paid remains, thus establishing the court's jurisdiction under the Tucker Act. *See Holley v. United States,* 124 F.3d 1462, 1465 (Fed. Cir.1997) ("It is well established that 37 U.S.C. § 204 serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

The court has jurisdiction over Plaintiff's claims, because the Complaint properly invokes both the Tucker Act, *i.e.,* the "specific statute [that] sets the court's jurisdictional parameters" and the Military Pay Act, *i.e.,* "a separate statute [that] establishes the right that allegedly has been breached." *Fisher v. United States,* 364 F.3d 1372, 1376 (Fed.Cir. 2004). In exercising jurisdiction in this case, the court's actions are consistent with the United States Court of Appeals for the Federal Circuit's holding in *Voge v. United States,* 844 F.2d 776, 781 (Fed.Cir.1988) (quoting *Silbert v. United States,* 566 F.2d 1190 (Ct.Cl.1977)) ("[S]ection 1491(a) gives the Claims Court power to order the correction of military records only 'incident of and collateral to' its award of a money judgment."); *see also Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (recognizing "judicial review of military service determinations with money consequences is available").[8]

---

8. Since Plaintiff has satisfied the substantive requirements of *Testan, ipso facto,* Plaintiff also has satisfied any lesser jurisdictional requirements that the United States Supreme Court may have recognized in *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). *See Fisher,* 364 F.3d at 1376–78 (holding that *"White Mountain* [established] a new test [that] clearly lowers the threshold for establishing that a statute or regulation is money-mandating, for it replaces a normal 'fairly interpreted' test with a less-demanding test of 'reasonable amenability' based on 'fair influences.' "); *see also id.* at 1388 (Dyk, J., dissenting) ("[T]he correct test is whether the statute can 'fairly be interpreted' as money-mandating, *i.e.,* whether it is 'reasonably amenable' to such a construction.").

In this case, there is no question that the Administrative Record before the ADB and BCNR confirms that Plaintiff exhausted all available administrative remedies prior to filing the Complaint in this action. *See* Compl. ¶¶ XI–XXXI; *see also* AR at 2–23.

## B. Justiciability.

■ Where a court possesses jurisdiction to hear a claim, "when that claim presents a nonjusticiable controversy, the court may nevertheless be prevented from asserting its jurisdiction." *Roth*, 378 F.3d at 1385. The United States Court of Appeals for the Federal Circuit repeatedly has emphasized the duty of the court, in cases concerning military personnel and benefits, to be mindful of the import of the doctrine of justiciability, *i.e.*, whether the dispute is one within the competency of the court. *See Fisher*, 364 F.3d at 1381 ("Justiciability has both constitutional and prudential dimensions ... Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness, and political question are within its ambit. One aspect of justiciability relates to the issue of whether deference in a given case should be given by the judiciary to the particular authority and competence of another branch of government...[Justiciability also] can arise under basic separation of powers concepts or because Congress has dictated that such deference be given.") (citations omitted). The United States Court of Appeals for the Federal Circuit has explained "that a controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Roth*, 378 F.3d at 1385 (internal quotations and citations omitted).

■ The United States Court of Appeals for the Federal Circuit "has consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the *particular procedure* followed in rendering a military decision may present a justiciable controversy." *Id.* (quoting *Adkins*, 68 F.3d at 1322) (emphasis added). Specifically, our appellate court has recognized that:

> [A] court may in fact decide whether the military followed its own procedures, which by their nature limit the military's discretion. Accordingly, in cases in which procedural violations are alleged, 'the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations.' To engage in such an inquiry does not intrude upon any discretion reserved exclusively for the military; rather, the inquiry merely ascertains whether applicable military procedures, statutory or regulatory, were followed.

*Id.* (quoting *Adkins*, 68 F.3d at 1323); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002) ("The military no less than any other organ of government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them."); *Holley v. United States*, 124 F.3d 1462, 1468 (Fed.Cir.1997) ("[O]ur concern is solely whether the decision ... without a full hearing before a board of inquiry violated any statute, regulation, or the fundamental due process that the Constitution provides to all persons.").

■ The issue of whether the ADB, the BCNR, or the Assistant Secretary violated applicable statutes and regulations in this case is justiciable, because a decision is not insulated from judicial review if it flows directly from the breach of a statute or regulations. *See Roth*, 378 F.3d at 1386 ("What we think the government fails to recognize, however, is that a normally nonjusticiable decision is not insulated from judicial review if it flows directly from the breach of a statute or regulation.").

## C. Standard Of Decision.

### 1. On A Motion For Judgment On Administrative Record.

The United States Court of Appeals for the Federal Circuit has held that:

> The [United States] Court of Federal of Claims applies the same standard in decid-

ing a motion for judgment on the agency record as it would in deciding a motion for summary judgment. Therefore, judgement on the agency record is only appropriate when there are no issues of material fact and when one party is entitled to a judgment as a matter of law.

*Wagner v. United States,* 365 F.3d 1358, 1361 (Fed.Cir.2004) (citations omitted); *see also* RCFC 56.1.

### 2. The Board For Correction Of Naval Records And Assistant Secretary Are Required To Correct "Plain Legal Error."

██ Where, as here, a servicemember petitions the appropriate board for the correction of military records *"[t]he Secretary is obligated* not only to properly determine the nature of any error or injustice, but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.' " *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004) (quoting *Caddington v. United States,* 147 Ct.Cl. 629, 632, 178 F.Supp. 604 (1959) (emphasis added)). Indeed, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Id.* (quoting *Yee v. United States,* 206 Ct.Cl. 388, 512 F.2d 1383, 1387 (1975)). As the United States Court of Appeals for the Federal Circuit has explained: "[T]he Secretary and ... boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Id.* (quoting *Caddington,* 147 Ct.Cl. at 634, 178 F.Supp. 604). Accordingly, "[t]he boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military." *Dodson,* 988 F.2d at 1204 ("These statutes and regulations make clear that the civilian correction boards have a duty to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief. The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military. Such legal error includes the military's 'violation of statute, or regulation, or mandatory procedure, or unau-

thorized act.' ") (citing *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992); *Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261, 1266 (1981); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 813–13 (1979) *(en banc );* *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979); *Yee v. United States,* 206 Ct.Cl. 388, 512 F.2d 1383, 1387–88 (1975)).

### D. The Applicable Statute And Regulations In This Case.

#### 1. Congress Required The Secretary Of Defense And The Service Secretaries To Proscribe Standards For Administrative Separation.

Congress expressly limited the circumstances under which regular enlisted members of the armed forces may be discharged prior to the end of his or her enlistment:

No regular enlisted member of an armed force may be discharged before his term of service expires, except—

(1) *as prescribed by the Secretary concerned;*

(2) by sentence of a general or special court martial; or

(3) as otherwise provided by law.

10 U.S.C. § 1169 (emphasis added).

#### 2. Three Sets Of Regulations Have Been Promulgated, Pursuant To 10 U.S.C. § 1169, Governing Administrative Separation.

##### a. Department Of Defense Directive ("DODDIR") Governing Administrative Separation.

Pursuant to 10 U.S.C. § 1169(1), the Secretary of Defense promulgated Department of Defense Directive ("DODDIR") 1332.14 to establish "policies, standards, and procedures governing the administrative separation of enlisted members from the Military Services." DODDIR 1332.14 ¶ 1; *see also* 47 FED. REG. 10,162 (Mar. 9, 1982) (final rule). In relevant part, DODDIR 1332.14 provides:

E3.A1. *ATTACHMENT 1 TO ENCLOSURE 3 PART 1*

E3.A1.1. REASONS FOR SEPARATION

\* \* \* \* \* \*

E3.A1.1.11. *Misconduct*

E3.A1.1.11.1 *Basis*

E3.A1.1.11.1.1. *Reasons.* A member may be separated for misconduct when it is determined under the guidance set forth in paragraph E3.A2.1.1. of Part 2 that the member is unqualified for further military service by reason of one or more of the following circumstances:

\* \* \* \* \* \*

E3.A1.1.11.1.1.4. *Civilian Conviction*

E3.A1.1.11.1.1.4.1. Conviction by civilian authorities or action taken that is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, *when the specific circumstances of the offense warrant separation, and* the following conditions are present:

E3.A1.1.11.1.1.4.1.1. A punitive discharge would be *authorized* for the same or a closely related offense under the Manual for Courts-martial (reference(q)); *or*

E3.A1.1.11.1.1.4.1.2. The sentence by civilian authorities includes confinement for 6 months or more without regard to suspension or probation.

\* \* \* \* \* \*

E3.A3. *ATTACHMENT 3 TO ENCLOSURE 3 PART 3*

\* \* \* \* \* \*

E3.A3.1.3. *Administrative Board Procedures*

E3.A3.1.3.5.7. *Findings and Recommendations*

E3.A3.1.3.5.7.1. *The Board shall determine its findings and recommendations in closed sessions. Only voting members of the board shall be present.*

E3.A3.1.3.5.7.2. *The Board shall determine whether each allegation in the notice of proposed separation is sup-*

*ported by a preponderance of the evidence.*

DODDIR 1332.14 at Encl 3, Parts 1–3 (underline in original) (emphasis added); *see also* 47 Fed. Reg. 10,162 (Mar. 9, 1992) (final rule).

**b. Secretary Of The Navy Instruction ("SECNAVINST") Governing Administrative Separation.**

Pursuant to DODDIR 1332.14, the Secretary of the Navy promulgated Secretary of the Navy Instruction ("SECNAVINST") 1910.4B, "[t]o reissue and update the policies, standards, and procedures for the administrative separation of enlisted servicemembers from the Department of the Navy." SECNAVINST 1910.4B ¶ 1; *see also* AR at 411–96 (containing SECNAVINST 1910.4B). SECNAVINST 1910.4B is consistent with DODDIR 1332.14 and, in relevant part, provides:

*PART 1 REASONS FOR SEPARATION*

K. *Misconduct*

1. *Basis*

A. *Reasons.* A servicemember may be separated for misconduct when it is determined under the guidance set forth in section A of part 2 that the servicemember is unqualified for further naval services by reason of one or more of the following:

\* \* \* \* \* \*

(4) *Civilian conviction*

(a) Conviction by civilian authorities or action taken that is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, *when the specific circumstances of the offense warrant separation, and* the following conditions are present:

1. A punitive discharge would be *authorized* for the same or a closely related offense under the manual for Courts–Martial (reference (r)); *or*

2. The sentence by civilian authorities includes confinement of 6 months or more without regard to suspension or probation.

*PART 5 GUIDELINES ON CON-DUCTING AN ADMINIS-TRATIVE BOARD*

A. *Hearing Procedures.* If a respondent requests a hearing before an Administrative Board, the Following procedures are applicable:

 \* \* \* \* \* \*

 7. *Findings and Recommendations*

 a. *The Board shall determine its findings and recommendations in closed sessions. Only voting members shall be present.*

 b. *The Board shall determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence.*

SECNAVINST 1910.4B at Encl. 2, Parts 1, 5 (underline in original) (emphasis added); *see also* AR at 411–96 (containing SECNAVINST 1910.4B).

 c. **Military Personnel Manual ("MILPERSMAN") Articles Governing Administrative Separation.**

The Chief of Naval Personnel [9] promulgated Articles 1900 and 1910 of the Military Personnel Manual ("MILPERSMAN"), pursuant to SECNAVINST 1910.4B, to establish policies and procedures for the administrative separation of enlisted servicemembers. In relevant part, MILPERSMAN 1910–144 provides:

Policy Members may be separated based on:

civil conviction or actions tantamount to findings of guilt:

 admissions
 deferred prosecution
 entry in adult/juvenile pretrial intervention programs
 NOLO Contendere (i.e., no contest pleas, etc.)

When:

the offense would *warrant* a punitive discharge per MCM, Appendix 12 for the same or closely related offense;

the specific circumstances of the offense warrant separation; *or*

civil sentence includes confinement for 6 months without regard to suspension, probation, or early release.

Foreign court convictions are not binding on administrative boards, but do not preclude processing due to misconduct (serious offense or civil conviction)

 \* \* \* \* \* \*

Processing is mandatory for:

 \* \* \* \* \* \*

• deviant sexual behavior (lewd and lascivious acts; sodomy (forcible heterosexual); child molestation; *indecent acts, and /or exposure;* or incest).

*See* MILPERSMAN 1910–144 (emphasis added).

In addition, in relevant part, MILPERSMAN Article 1910–518 sets forth the relevant ADB procedures:

*The board shall determine its findings and recommendations in closed sessions with only voting members present.*

| Step | Action |
|------|--------|
| 1 | Determine whether each reason in the notification letter is supported by a preponderance of evidence: |

| IF . . . | THEN . . . |
|----------|-----------|
| a reason is supported by a preponderance of evidence | GO to STEP 2. |
| a reason is not supported | STOP. No further action required |

**9.** The Chief of Naval Personnel is authorized to promulgate and change the MILPERSMAN, pursuant to the additional authority authorized for the Deputy Chief of Naval Operations (Manpower and Personnel).

NOTE: *When processing includes a court-martial conviction which is approved by the convening authority, or a civilian conviction (or civil action tantamount to a civil conviction), the Board may not render its own findings, because these matters have already been judicially determined to have occurred. The only exception is civil convictions from a foreign court which are not binding on admin boards.*

MILPERSMAN 1910–518 (emphasis added).

In addition, MILPERSMAN 1910–514 provides:

When processing includes:

- any court-martial conviction; or

- a civilian conviction, or finding tantamount to a finding of guilty by a civil court system.

*The Board may not render its own findings* because these matters have been judicially determined to have occurred.

*Unless there are additional reasons for separation, the board will proceed directly to the separation/retention recommendation phase of the hearing.*

The only exception is civil convictions from foreign nations which are not binding on administrative boards.

MILPERSMAN 1910–514 (emphasis added).

### E. The Court's Resolution Of The Parties' Cross–Motions For Judgment On The Administrative Record.

Resolution of the parties' Cross–Motions for Judgment on the Administrative Record requires the court to determine whether MILPERSMAN 1910–144, 1910–514, and 1910–518 are contrary to and in substantive conflict with DODDIR 1332.14 and SECNAVINST 1910.4B, regarding the evidentiary burden of proof that the Government must satisfy to justify involuntary separation for misconduct as a result of a civilian conviction. If so, the court must determine whether the ADB's application of those regulations was "plain legal error" and the import thereof on the BCNR and Assistant Secretary's subsequent decisions.

### 1. Requirements Of DODDIR 1332.14 And SECNAVINST 1910.4B.

Pursuant to 10 U.S.C. § 1169(1), the Secretary of Defense promulgated Department of Defense Directive ("DODDIR") 1332.14 to establish "policies, standards, and procedures governing the administrative separation of enlisted members from the Military Services." DODDIR 1332.14 at ¶ 1; *see also* 47 FED. REG. 10,162 (Mar. 9, 1982) (Final Rule). Pursuant to DODDIR 1332.14, the Secretary of the Navy was authorized to promulgate Secretary of the Navy Instruction ("SECNAVINST") 1910.4B, "[t]o reissue and update the policies, standards, and procedures for the administrative separation of enlisted servicemembers from the Department of the Navy." SECNAVINST 1910.4B ¶ 1; *see also* AR at 411–96 (containing SECNAVINST 1910.4B).

Together, DODDIR 1332.14 and SECNAVINST 1910.4B require that, prior to the involuntary separation of a servicemember for misconduct due to a civilian conviction, an ADB must determine, in closed session, whether ."the specific circumstances of the offense warrant separation, *and*" that *either* "a punitive discharge would be authorized for the same or a closely related offense under the manual for Courts–Martial (reference (r));" *or* "the sentence by civilian authorities includes confinement of 6 months or more without regard to suspension or probation." DODDIR 1332.14 at Encl. 3, Part 1, ¶ 1.11.1.1.4; *see also* SECNAVINST 1910.4B at Encl.2, Part 1, ¶ K.1.A(4) (emphasis added). The elements required to establish involuntary separation for misconduct resulting from a civilian conviction are stated in the conjunctive. *Id.*

Although DODDIR 1332.14 and SECNAVINST 1910.4B require that an ADB determine whether a particular conviction qualifies for separation, neither requires that an ADB find that a respondent actually committed the offense on which the alleged conviction is

based. *Id.* Accordingly, because the existence of a qualifying civilian conviction, rather than guilt to the underlying offense, provides the basis for involuntary separation, the Government is not required to prove, nor is the ADB required to find, that the respondent committed the underlying offense. Under both regulations, an ADB could be convinced of a respondent's innocence of the underlying offense and still find misconduct, because the circumstances of the offense, *e.g.,* a significant term of confinement interfering with the performance of military duties, warrant separation. On the other hand, neither regulation prohibits an ADB from considering a respondent's actual guilt or innocence, when determining whether "the specific circumstances of the offense warrant separation." DODDIR 1332.14 at Encl 3, Part 1, ¶ 1.11.1.1.4; *see also* SECNAVINST 1910.4B at Encl. 2, Part 1, ¶ K.1.A(4). An ADB is charged only with determining, by a preponderance of the evidence, whether a respondent, as a matter of fact, has been convicted by civilian authorities, and whether that conviction satisfies the elements of involuntary separation for misconduct resulting from a civilian conviction. *See* DODDIR 1332.14 at Encl 3, Part 3, ¶ 1.3.5.7; *see also* SECNAVINST 1910.4B at Encl. 2, Part 5, ¶ A.7.

### 2. MILPERSMAN 1910–144, 1910–514, And 1910–518 Are Contrary To And In Substantive Conflict With The Requirements Of DODDIR 1332.14 And SECNAVINST 1910.4B.

■ It is well established that if regulations promulgated by a service chief conflict with those issued by the Secretary of Defense or the relevant Secretary of a military service, the former are invalid when, and to the extent, that they conflict with regulations issued by a superior in the chain of command. *See* 10 U.S.C. § 1169;[10] *see also Gilchrist v. United States,* 33 Fed.Cl. 791, 800–01 (1995) ("The DOD Directive is con-

trolling authority over the Army regulation.") (quoting *Casey v. United States,* 8 Cl.Ct. 234, 238–39 (1985)) ("To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way."); *United States v. Lopez,* 35 M.J. 35, 39 (CMA 1992) ("The military, like the Federal and state systems, has hierarchical sources of rights ... Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules that are constitutional and provide greater rights for the individual."); *United States v. Daskam,* 31 M.J. 77, 81 (CMA 1990) ("Because of the hierarchical structure of our Nation's military establishment, a Department of Defense directive binds the Secretary of Navy in issuing instructions; an Instruction from the Secretary of the Navy binds the Chief of Naval Operations in his issuance of instructions; and the Instructions of the Chief of Naval Operations bind subordinate commands."); AR at 11 (BCNR, in this case, recognized that: "If there is a conflict between a DOD regulation and a service directive, the former is controlling. Additionally, an instruction from SECNAV binds all of his subordinates in their authority to issue directives.").

Therefore, the court has determined, as a matter of law, that MILPERSMAN 1910–144, 1910–514, and 1910–518, are contrary to, and in substantive conflict with, DODDIR 1332.14 and SECNAVINST 1910.4B in three respects.

■ First, the elements of involuntary separation for misconduct, resulting from a civilian conviction, are stated in MILPERSMAN 1910–144 in the disjunctive, and, therefore, fundamentally change the burden of proof that must be satisfied to justify separation as set forth in DODDIR 1332.14 and SECNAVINST 1910.4B, stating the elements in the conjunctive.[11] Significantly,

---

**10.** Congress has expressly mandated:
No regular enlisted member of an armed force may be discharged before his term of service expires, except—
(1) *as prescribed by the Secretary concerned;*
(2) by sentence of a general or special court martial; or

(3) as otherwise provided by law.
10 U.S.C. § 1169 (emphasis added).

**11.** Construing the last element of MILPERSMAN 1910–144 in the disjunctive, the Deputy Assistant Judge Advocate General of the Navy (Administrative Law) stated in an Advisory Opinion to the

704

DODDIR 1332.14 and SECNAVINST 1910.4B require a finding by an ADB that the specific circumstances of the offense warrant separation, *and either* a finding that a punitive discharge would be authorized for the same or a closely related offense under the MCM, *or* a finding that the sentence by civilian authorities includes confinement of six months or more without regard to suspension or probation. *See* DODDIR 1332.14; SECNAVINST 1910.4B. MILPERSMAN 1910–144, however, requires only a finding that the specific circumstances of an offense warrant separation, *or* a finding that the offense would warrant a punitive discharge per Manual for Courts–Martial for the same or closely related offense, *or* a finding that the civil sentence includes confinement for six months without regard to suspension, probation, or early release; each individually providing a lawful basis for separation. *See* MILPERSMAN 1910–144. The substantive distinction is that MILPERSMAN 1910–144 substantially lessens or reduces the evidentiary burden of proof that the Government must satisfy to justify an involuntary separation for misconduct from the evidentiary burden of proof set forth in DODDIR 1332.14 and SECNAVINST 1910.4B. Accordingly, MILPERSMAN 1910–144, as an inferior "rule," is invalid to the extent that it changes and substantially lessens the Government's evidentiary burden of proof, by allowing the Government to establish only one substantive element of involuntary separation for misconduct resulting from a civilian conviction, instead of requiring that the Government establish at least two substantive elements, as required by DODDIR 1332.14 and SECNAVINST 1910.4B.

Second, MILPERSMAN 1910–144 changes one of the substantive elements required for involuntary separation due to misconduct, resulting from a civilian conviction, by requiring a finding that: "the offense would *warrant* a punitive discharge" for the same or closely related offense, rather than finding that a "punitive discharge *would be authorized* for the same or a closely related offense under the Manual for Courts–Martial." *Compare* MILPERSMAN 1910–144 *with* DODDIR 1332.14 and SECNAVINST 1910.4B (emphasis added). The significance of this change is that MILPERSMAN 1910–144 permissibly narrows the category of civilian convictions that qualify for involuntary separation, by requiring: in addition to a finding that the specific circumstances of the warrant separation, the ADB must determine that a punitive discharge is warranted, rather than merely authorized, under the Manual for Courts–Martial for the same or a closely related offense. *See United States v. Davis,* 47 M.J. 484, 486–87 (C.A.A.F.1998) ("[W]e will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution."); *see also Lopez,* 35 M.J. at 39 ("Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules that are constitutional and provide greater rights for the individual.").

Third, DODDIR 1332.14 and SECNAVINST 1910.4B require that an ADB: "*determine* whether *each allegation* in the notice of proposed separation *is supported by* a preponderance of the evidence." *See* DOD-

---

BCNR, in another case, Docket No. 7317–01, that:

> DODDIR 1332.14 permits the separation of an enlisted member who has been convicted of a civilian criminal offense if a two-prong test is satisfied. First, the specific circumstances of the offense must warrant separation. Second, either a punitive discharge would be authorized for the same or closely related military offense, or the sentence includes six months of confinement without regard to suspension or probation. Appropriately, SECNAVINST 1910.4B mirrors this directive. MILPERSMAN 1910–44 does not. Rather, *MILPERSMAN 1910–144 offers a reformulation of the two-prong test, permitting separation in either of*

> *two situations:* (1) the specific circumstances of the offense warrants separation, and the offense would warrant a punitive discharge for the same or closely related offense under the Manual for Courts–Martial (MCM), or (2) the civil sentence includes confinement of six months or more without regard to suspension, probation, or early release. Clearly, *the first situation is consistent with the applicable superior directives. Conversely, the second situation is not because a mandated element of the basis for separation is omitted; namely, that he specific circumstances of the offense warrant separation.*

AR at 100 (emphasis added) (Mar. 18,·2002 Ltr. to Chairman, BCNR).

DIR 1332.14 at Encl 3, Part 3, ¶ 1.3.5.7 (emphasis added); *see also* SECNAVINST 1910.4B at Encl. 2, Part 5, ¶ A.7. In marked contrast, MILPERSMAN 1910–518 provides "[w]hen processing includes . . . a civilian conviction (or civil action tantamount to a civil conviction), *the [ADB] may not render its own findings,* because these matters have already been judicially determined to have occurred." (emphasis added). Similarly, MILPERSMAN 1910–514 provides that "[w]hen processing includes . . . a civilian conviction, or finding tantamount to a finding of guilty by a civil court system . . . *[t]he [ADB] may not render its own findings* because these matters have been judicially determined to have occurred . . . *the board will proceed directly to the separation/retention recommendation phase of the hearing.*" (emphasis added). The significance is that MILPERSMAN 1910–518 is invalid, because it prohibits an ADB from determining whether the elements of involuntary separation for misconduct resulting from a civilian conviction have been established by a preponderance of the evidence, contrary to DODDIR 1332.14 and SECNAVINST 1910.4B. *See* MILPERSMAN 1910–518 ("When processing includes a court-martial conviction which is approved by the convening authority, or a civilian conviction (or civil action tantamount to a civil conviction), the Board may not render its own findings, because these matters have already been judicially determined to have occurred."). Similarly, MILPERSMAN 1910–514 is invalid, because it absolutely prohibits an ADB from issuing findings, where a civilian conviction or civil action tantamount to a civil conviction is involved, and mandates that an ADB proceed directly to determine a recommendation of retention or separation. Accordingly, MILPERSMAN 1910–518 impermissibly bars any consideration of the substantive elements of separation, resulting from a civilian conviction. *See* MILPERSMAN 1910–514 ("The Board may

not render its own findings . . . Unless there are additional reasons for separation, the board will proceed directly to the separation/retention recommendation phase of the hearing.").

3. **As A Matter Of Law, The Substantive Decisions Of The Administrative Discharge Board, The Board For Corrections Of Naval Records, And The Assistant Secretary Were Erroneous.**

a. **As A Matter Of Law, The Administrative Discharge Board's Reliance On An Application Of MILPERSMAN 1910–144, 1910–514, 1910–518 Was Plain Legal Error.**

■ In this case, the ADB improperly was instructed by the Recorder as to the law on three separate occasions. First, the ADB was provided with a copy of MILPERSMAN 1910–144 that erroneously stated that the substantive elements of involuntary separation for misconduct resulting from a civilian conviction are disjunctive. *See* AR at 214 (The Recorder describing MILPERSMAN 1910–144, introducing Exhibit 4, which is missing from the ADB Record). Second, during the Recorder's opening statement, the ADB was instructed not to consider the facts of the case, although the "specific circumstances of the offense warrant separation" is a substantive element that must be established to justify separation for misconduct, resulting from a civilian conviction, under DODDIR 1332.14 and SECNAVINST 1910.4B. *See* AR at 214 (The Recorder advising the ADB: "We're not going to go into the facts of the case because [Plaintiff] plead no contest by the standards of the MILPERSMAN we find misconduct, so that's the decision that has to be made."). Third, after the ADB found no misconduct and announced those findings, even though there is no provision for reconsideration,[12] the Recorder

---

12. Although the applicable regulations do not provide for reconsideration, the MILPERSMAN provides:

> If the Admin Board finds that a preponderance of the evidence does support one or more reasons for separation alleged and recommends retention then the [Separation Authority]:

*must approve the Board's findings and recommendations unless the overwhelming weight of evidence of record was not recognized by the Admin Board,* in which case, the convening authority may reprocess the case under Best Interest of the Service for submission to SEC-NAV for final action.

asked for and was granted a recess, during which he persuaded the ADB that MILPERSMAN 1910–144, 1910–514 and 1910–518 required a findings of misconduct. *See* AR at 527 ("When we announced the original findings the—I think the government lawyer immediately asked for a recess and had everyone leave the room. And he and the defense lawyer, basically, approached the board, and drew our attention to the fact that in the material that had been presented to us was a navy instruction that required us to find—to find guilt for civil conviction based on the fact that Petty Officer Strickland had entered a no contest plea to the charges against him in Jacksonville."); *see also* AR at 218 (ADB indicating findings were "bound by MILPERSMAN 1910–518.").

As the Administrative Record in this case establishes, the ADB never determined that Plaintiff's civilian conviction satisfied the substantive elements for involuntary separation for misconduct due to a civilian conviction. The ADB improperly was instructed by the Recorder that a finding of misconduct due to a civilian conviction could be established by a preponderance of the evidence only as to one substantive element, as stated in MILPERSMAN 1910–144, instead of a preponderance of the evidence as to two substantive elements, as required by DODDIR 1332.14 and SECNAVINST 1910.4B. Even though the ADB improperly was instructed as to a lower burden of proof, the ADB initially determined that the preponderance of the evidence did not support either Misconduct—Commission of a Serious Offense or Misconduct—Civilian Conviction. Moreover, the

Recorder then compounded the initial error by instructing the ADB that where a civilian conviction or action tantamount to a finding of guilt is involved, pursuant to MILPERSMAN 1910–514 and 1910–518, the Government does not bear any burden of proof, thereby persuading the ADB to change its finding of "no misconduct" to one of "misconduct."

**b. As A Matter Of Law, The Board For Corrections Of Naval Records' Failure To Correct The "Plain Legal Error" Of The Administrative Discharge Board Was Erroneous.**

■ Pursuant to 10 U.S.C. § 1552 and 32 C.F.R. 723, the BCNR has "a duty to determine whether there has been an error or injustice and, if there has been, to grant thorough and fitting relief. The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military. Such legal error includes the military's 'violation of statute, or regulation, or mandatory procedure, or unauthorized act.'" *Dodson,* 988 F.2d at 1204.

Unlike the ADB, the BCNR was aware of the conflict between MILPERSMAN 1910–144.1910–514, and 1910–518 and DODDIR 1332.14 and SECNAVINST 1910.4B and attempted to reconcile[13] them as follows:

[A] civil conviction is binding on an ADB, and no contrary finding on this issue may be made. Further, although a MILPERSMAN article contains this specific guidance, the guidance is superfluous, given the provisions of DODDIR 1332.14, SECNAVINST 1910.4B and the MIL-

---

MILPERSMAN 1910–710 (emphasis added); *see also* AR at 141.

**13.** The Deputy Assistant Judge Advocate General of the Navy (Administrative Law) has also attempted to reconcile the conflict between MILPERSMAN 1910–514 and DODDIR 1332.13 and SECNAVINST 1910.4B:

The *res judicata* procedural rule within MILPERSMAN 1910–144 and 1910–514 is consistent with DODDIR 1332.14. MILPERSMAN 1910–144, in accordance with DODDIR 1332.14, clearly reflects that only qualifying convictions may be the basis of administrative separation. The application of *res judicata* as a procedural rule merely bars the respondent from diverting the attention of the Board away from *the seminal issue of whether the civilian*

*conviction is a qualifying conviction,* to a potentially distracting and time consuming collateral attack on a civilian criminal conviction by the respondent.

AR at 102 (underline in original) (emphasis added) (Mar. 18, 2002 Ltr. to Chairman, BCNR). The plain language of MILPERSMAN 1910–514, however, requires the ADB to "proceed directly to the separation/retention recommendation phase of the hearing," thereby, prohibiting the ADB from rendering findings on whether the conviction at issue is a qualifying conviction. MILPERSMAN 1910–514 ("The Board may not render its own findings ... the board will proceed directly to the separation/retention recommendation phase of the hearing.").

PERSMAN which specifically state that separation of a servicemember is authorized by reason of misconduct due to a civil court conviction. These provisions make it crystal clear that the fact of the individual's underlying conviction, or equivalent action, results in presumptively [sic] eligibility for separation, and whether or not the individual actually committed the underlying act is not relevant. *The regulatory provisions that require the ADB to determine whether allegations are supported by the evidence only authorize the ADB to determine whether an individual has been convicted, not whether the respondent committed the underlying act of misconduct.* Accordingly, as it pertains to separations due to civil conviction, the MILPERSMAN may be redundant but it is neither inconsistent with higher-level directives nor improper.

AR at 52–53 (emphasis added).

Although the BCNR correctly recognized that a respondent may be separated on the basis of a civilian conviction, regardless of actual guilt, the BCNR erred when it concluded that the ADB is only authorized "to determine whether an individual has been convicted" because not all convictions qualify for involuntary separation for misconduct resulting from a civilian conviction. AR at 52–52.[14]

14. In this case, the BCNR acknowledged in a footnote that, "conviction is only one of the elements of separation caused by a civil conviction (*Infra*, at ¶ 3v)." The BCNR, however, did not undertake any analysis of the elements of involuntary separation for misconduct resulting from a civilian conviction. *See* AR at 53 n. 42. Had the BCNR conducted an analysis of each of the required elements of involuntary separation for misconduct resulting from a civilian conviction, instead of focusing on the inequities of Plaintiff's case, the irreconcilable conflict between both DODDIR 1332.14 and SECNAVINST 1910.4B and MILPERSMAN 1910–144, 1910–514, and 1910–518 would likely have been recognized, as it was in subsequent Final Opinion by the BCNR in a different case:

Counsel is correct to the extent that he claims that lower-level directives must comport with regulations issued at a higher level. However, the Board cannot agree with the contention that the statement in the MILPERSMAN to the effect that a civil conviction is binding on an ADB is inconsistent with DODDIR 1332.14 and SECNAVINST 1910.4B. Even though only the MILPERSMAN contains this specific guidance, the guidance is superfluous, since all three directives specifically state that separation of a servicemember may be authorized by reason of misconduct due to civil court conviction. The pertinent provisions of the regulations make it crystal clear that an individual may be processed on the basis of a conviction, and whether or not the individual actually committed the underlying act is not relevant. Accordingly, the regulatory provisions that require the ADB to determine whether allegations against a respondent are supported by the evidence only authorize the ADB to determine whether an individual has been convicted, not whether the respondent committed the underlying act of misconduct. Therefore, as it pertains to separations due to civil convictions, the MILPERSMAN may be redundant but it is neither inconsistent with higher-level directives nor improper.

However, the most important issue is not whether the ADB is bound by civil conviction, but whether the MILPERSMAN requires an ADB to render a finding of misconduct if it determines that respondent has been convicted. On this issue, the Board agrees with counsel that the MILPERSMAN is inconsistent with DODDIR 1332.14 and SECNAVINST 1910.4B, in that the former directive requires an ADB to render a finding of misconduct upon a determination that the individual has been convicted by civil court, and the latter two regulations contain no such provision. The Board disagrees with JAG's conclusion to the effect that DODDIR 1332.14 and SECNAVINST 1910.4b only provide guidance to the respondents [Commanding Officer], and once he determines that separation due to civil conviction is warranted, the ADB is relegated to a determination of whether the conviction occurred.

In coming to this conclusion, the Board finds that all three directives state, in pertinent part, that an individual may be discharged by reason of misconduct due to civil conviction only if (1) there is a civilian conviction; (2) the offense could result in a punitive discharge; and (3) the offense warrants separation. All three requirements, or "elements of the offense," as the JAG refers to them, must be present before an individual may be so separated. Accordingly, proof of a civil conviction, even though binding on an ADB, only satisfies one of these requirements. The requirement that the offense warrant separation is obviously significant, given the 1982 comments of DODDIR 1332.14's drafters concerning identical language in the provisions authorizing separation due to commission of a serious offense.

Additionally, all three regulations state that it is the responsibility of the ADB, not the [Commanding Officer], to determine if allegations against a respondent are supported by a preponderance of he evidence. To the Board, these provisions mean that before an ADB may find that an individual is subject to discharge

708

Moreover, neither DODDIR 1332.14 nor SECNAVINST 1910.4B require that an ADB issue findings without regard to a respondent's underlying guilt or innocence, when determining whether "the specific circumstances of the offense warrant separation." DODDIR 1332.14; *see also* SECNAVINST 1910.4B. Therefore, MILPERSMAN 1910–514 and 1910–518 do more than simply prohibit consideration of a respondent's underlying guilt or innocence. Instead, they impermissibly preclude an ADB from considering the elements of involuntary separation for misconduct resulting from a civilian conviction, as specifically enumerated in DODDIR 1332.14 and SECNAVINST 1910.4B. In effect, the MILPERSMAN shifts responsibility for determining whether a particular conviction qualifies for separation from the ADB to the ADB Convening Authority, again fundamentally changing and lessening the Government's burden of proof.[15]

The Government counters:

While the SECNAVINST makes it possible to find misconduct based upon a civilian conviction, the Secretary has reasonably determined, through the MILPERSMAN, that such a conviction must be taken as concretely establishing the underlying conduct. This result avoids an inefficient and redundant trial of the

underlying events. *Nevertheless, the MILPERSMAN still affords the [ADB] the latitude to determine whether the circumstances warrant separation.*

Def. Reply at 14 (emphasis added).

MILPERSMAN 1910–514 provides "[w]hen processing includes ... a civilian conviction, or finding tantamount to a finding of guilty by a civil court system ... [t]he Board may not render its own findings because these matters have been judicially determined to have occurred ... *the board will proceed directly to the separation/retention recommendation phase of the hearing.*" MILPERSMAN 1910–514 (emphasis added). Accordingly, in light MILPERSMAN 1910–514's complete prohibition on an ADB considering the elements of a proposed basis for separation where a civilian conviction is involved, the Government's assertion that the MILPERSMAN affords an ADB the "latitude to determine whether the circumstances warrant separation" is misleading in that it suggests that, under the MILPERSMAN, the ADB may consider whether "the specific circumstances of the offense warrant separation" as an element, rather than merely one of many factors relevant to an ADB recommendation regarding separation or retention. *See* MILPERSMAN 1910–212 ("The follow-

due to civil conviction, it must find that a preponderance of the evidence supports all three of the foregoing requirements. The additional MILPERSMAN provision, providing that and ADB must find misconduct if there is a civil conviction, effectively nullifies the ADB's authority and responsibility to consider the latter two requirements. The Board also believes, contrary to the conclusion set forth in the JAG advisory opinion, that when an ADB determines that an offense which resulted in a civil conviction does not warrant separation, the ADB is not relitigating the allegations that resulted in the conviction or violating the principle of res judicata, but only weighing the fact of the conviction against the nature and circumstances of the offense at issue.

The Board believes that its position on this issue may be better understood by the following example. Assume that a servicemember is convicted in civil court of disorderly conduct by spitting on the sidewalk, disorderly conduct, like indecent exposure is an offense under UCMJ Article 134. However, unlike indecent exposure, a punitive discharge is not authorized for disorderly conduct. If that individual is processed for separation, an ADB would find

that he has been convicted and also might find that the offense warranted separation. However, the ADB would also have to find that the offense could not warrant a punitive discharge. Accordingly, the Board believes the ADB would be compelled to enter a finding of "no misconduct," not because there was no civil conviction, but because the conviction at issue did not meet one of the essential requirements for that reason for separation. Under the model proposed by the JAG, the individual could be processed for separation and actually discharged even though the offense at issue could not result in a punitive discharge. The Board believes the drafters of DODDIR 1332.14 and SECNAVINST 1910.4B never intended such a result.

*See* Pl. Cros. Mot. at App. A (containing BCNR Opinion 803–03 (2003)).

15. "A commander or commanding officer empowered to convene a special court-martial has the authority to convene an Administrative Board." SECNAVINST 1910.4B at Encl. 1, ¶ 6. Only a Separation Authority, however, has authority to "take final action with respect to a specified type of separation." *Id.* ¶ 26.

ing factors should be considered on the issue of retention or separation . . . the seriousness of the offense."); *see also* AR at 26 (containing MILPERSMAN 1910–212.)

Contrary to the Government's assertion, the Secretary of the Navy did not issue the MILPERSMAN. *See* Def. Reply at 11 ("The [Chief of Naval Personnel] issued MILPERSMAN pursuant to the authority contained in Section 0105, United States Navy Regulations, 1990, which provides that such directives may be issued so long as they 'do not conflict with, alter, or amend these [U.S. Navy] regulations.'"). Therefore, the Chief of Naval Personnel does not have authority fundamentally to change and lessen the Government's burden of proof by decreasing the number of the substantive elements that must be established to justify an involuntary separation, as a result of a civilian conviction.

Accordingly, the court has determined that Plaintiff's involuntary separation for civilian misconduct was contrary to 10 U.S.C. § 1169, DODDIR 1332.14, and SECNAVINST 1910.4B. Moreover, the court has determined that the BCNR failed to correct legal error committed by the military. *See Dodson,* 988 F.2d at 1204 ("The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military.").

c. **As A Matter Of Law, The Assistant Secretary's Failure To Correct The "Plain Legal Error" Of The Board For Corrections Of Naval Records Was Erroneous.**

 Where, as here, a servicemember petitions the appropriate board for the correction of military records *"[t]he Secretary is obligated* not only to properly determine the nature of any error or injustice, but also to take such corrective action as will appropriately and fully erase such error or compensate such injustice." *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004) (quoting *Caddington v. United States,* 147 Ct.Cl. 629, 632, 178 F.Supp. 604 (1959) (internal quotations omitted) (emphasis added)). In this case, the Assistant Secretary failed to take appropriate corrective action to correct ei-

ther the ADB's erroneous reliance on MIL-PERSMAN 1910–114, 1910–514, and 1910–518, or the BCNR's failure to correct that error. Moreover, the nature of those uncorrected errors requires relief.

i. **The Error "Substantially Affected" The Decision To Involuntarily Separate Plaintiff.**

 The United States Court of Appeals for the Federal Circuit has instructed trial courts that, "it is not enough for the plaintiff [in a back pay case] to show merely that an error or injustice was committed in the administrative process, he must go further and either make a showing that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Christian v. United States,* 337 F.3d 1338, 1343 (Fed.Cir.2003) (quoting *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704 (1980) (internal quotations omitted)).

In this case, the Recorder failed to present any evidence regarding the circumstance leading to Plaintiff's *nolo contendere* plea that would afford the ADB with sufficient facts to determine whether "the specific circumstances of the offense warrant separation." AR at 529 ("To the best of my memory and I haven't reviewed anything since the board was held, the government basically didn't present a lot of anything. We knew what the charge had been, and other than his service record and some instructions—navy instructions—there really was no presentation. No police report, no police officer. The accuser was not there. Nothing like that was presented."). The Recorder also failed to present any evidence from which the ADB could determine whether a punitive discharge would be warranted under the MCM for a closely related offense. *Id.; see also* AR at 211–20 (ADB Record containing no indication that the ADB was presented with the text of Fla. Stat. 800.03 or any portion of the MCM).

Based on that evidence, and despite applying the substantive elements for involuntary

separation for misconduct resulting from a civilian conviction in the disjunctive, thereby, lowering the Government's burden of proof, the ADB returned a finding of "no misconduct." *See* AR at 527 ("The original findings that we announced were that found no misconduct for the civil conviction or for commission of a serious offense. That's originally what we announced."). The Recorder then eliminated the Government's burden of proof by instructing the ADB that it was required to find misconduct. *See* AR at 527 ("When we announced the original findings the—I think the government lawyer immediately asked for a recess and had everyone leave the room. And he and the defense lawyer, basically, approached the board, and drew our attention to the fact that in the material that had been presented to us was a navy instruction that required us to find—to find guilt for civil conviction based on the fact that Petty Officer Strickland had entered a no contest plea to the charges against him in Jacksonville."); *see also* AR at 219 ("[B]oard was bound by MILPERSMAN 1910–518."). As a direct result of the Recorder's improper instruction, the ADB changed its finding of "no misconduct" to a finding of misconduct. *Id.* The Assistant Secretary's decision to separate Plaintiff was predicated on that altered finding and a recommendation for separation based on that altered finding. *See* AR at 10–11 ("On 20 May 1999 [Assistant Secretary of the Navy for Manpower and Reserve Affairs] approved [the Chief of Naval Personnel's] recommendation. Accordingly, by message of 27 May 1999, SBU 22 was directed to separate Petitioner with a general discharge by reason of misconduct within 30 days.")

Accordingly, the court has determined that the erroneous application of MILPERSMAN 1910–144, 1910–514, and 1910–518 by the ADB "substantially affected" the Assistant Secretary's initial May 20, 1999 decision to separate Plaintiff. Likewise, the BCNR's failure to correct the ADB's "plain error" in relying on MILPERSMAN 1910–144, 1910–514, and 1910–518, rather than DODDIR 1332.14 and SECNAVINST 1910.4B, was erroneous and "substantially affected" the Assistant Secretary's December 20, 2002 not to correct.

## ii. The Error Is Not Amenable To Harmless Error Analysis.

The United States Court of Appeals for the Federal Circuit also requires trial courts to determine whether an error is amenable to harmless error analysis: "It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all, and certainly if directed to promulgate them by Congress, as in this case." *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988) (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)). Strict compliance with procedural requirements, however, "is not required where the error is deemed harmless." *Wagner*, 365 F.3d at 1361; *see also Milas v. United States*, 42 Fed.Cl. 704, 713 (1999) ("Mere technical procedural error is insufficient to warrant reversing the agency's administrative decision. The error must be a violation of mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced.").

As the United States Court of Appeals for the Federal Circuit explained in *Wagner:*

Our decisions regarding harmless error and civilian correction boards consist of two lines of cases, clearly summarized in this court's opinion in *Porter v. United States*, 163 F.3d 1304 (Fed.Cir.1998). The first line of cases involves substantive errors contained in a serviceman's military record, and explains that a civilian correction board should review the impact of errors in a military record on a serviceman's failure to be promoted for harmless error.

\* \* \* \* \* \*

The second line of cases involves procedural errors regarding the composition of military selection boards and holds that, in these instances, harmless error review is inapplicable.

*Wagner*, 365 F.3d at 1362; *see also Porter*, 163 F.3d at 1319 ("Instances of fundamental error, at least those affecting the composition of the deciding body, are not susceptible to review under the harmless error test."); *Sargisson v. United States*, 913 F.2d 918, 922–23

(Fed.Cir.1990) (holding that a procedural violation that did not prejudice the serviceman was harmless error).

In *Wagner*, the applicable Army regulations required prior approval of the Secretary of the Army before separation proceedings could be initiated against servicemen with more than 18 years of active federal service, on the date scheduled for release from active duty. Nevertheless, Wagner was processed for separation without the prior approval of the Secretary of the Army. *Id.* at 1359-61. The Department of the Army Active Duty Board ("DAADB") recommended that Plaintiff be discharged with an Under Other than Honorable characterization of service. *Id.* The Principal Deputy Assistant Secretary of the Army approved the DAADB recommendation and notified Wagner of that decision. *Id.* Afterwards, the Army recognized that Wagner had over 18 years of active federal service and that the Secretary of the Army's approval should have been obtained prior to initiating separation proceedings. *Id.* In an attempt to rectify the problem, the Army belatedly sought approval from the Assistant Secretary of the Army for Manpower and Reserve Affairs. *Id.* The Acting Assistant Secretary retroactively approved Wagner's release from active duty. *Id.* Wagner challenged his involuntary separation on procedural grounds, arguing that the error in his case was "fundamental" and not amenable to the "harmless error" rule. *Id.* at 1363.

The United States Court of Appeals for the Federal Circuit recognizing that "the situation [in *Wagner*] does not neatly match the facts of either line of harmless error cases," relied on the following precedent for a working analytical framework:

> The court in *Doyle* articulated two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error.

*Id.* (citing *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984 (1979)).

In *Wagner*, the first justification for refusing to apply the "harmless error" rule was inconclusive, because the regulatory scheme provided the Secretary of the Army with unconditional control over DAADB proceedings involving servicemembers with more than 18 years of active service and, even though the applicable regulations required prior approval, the underlying statute only required the Secretary of the Army's approval before the separation was implemented. *Id.* at 1364. As to the second justification, our appellate court concluded that the circumstances of that case precluded judicial review. *Id.* ("While the Secretary might have made the same decision prior to the commencement of the separation proceedings, ample reasons exist for why, on a fresh review of Wagner's record, he might instead have refused to permit proceedings and instead opted to retain him in active service.").

This case also does not fit into either of existing line of "harmless error" cases discussed in *Wagner*. Here, there was no error in Plaintiff's record before the ADB nor was the ADB improperly composed. Instead, the initial error in Plaintiff's case resulted from the Assistant Secretary's May 20, 1999 decision to separate Plaintiff based on plain legal error in the ADB findings where the Government's substantive burden of proof for determining misconduct was fundamentally changed and lowered, contrary to law. The second error was the BCNR's failure to correct the ADB's decision. The third error was the Assistant Secretary's failure to identify and correct the BCNR's decision. This case, however, is amenable to the analytical frame work enunciated in *Doyle* and applied in *Wagner*.

The first justification for not applying "harmless error" analysis is present in this case, because collectively the erroneous application of MILPERSMAN 1910–144, 1910–514 and 1910–518 fundamentally changed and lowered the Government's burden of proof, and also prohibited the ADB from making a determination of the substantive elements of misconduct. As to the first error regarding the burden of proof, the ADB "finding" of misconduct and the Assistant Secretary's May 20, 1999 decision to separate for misconduct based on that finding, are not amenable to "harmless error" analysis, because to hold otherwise would result in the erosion of an

"essential component of a fair trial." *See Doyle,* 220 Ct.Cl. 285 (1979) (recognizing the avoidance of the erosion of essential components of a fair trial as justification for not applying harmless error analysis). As to the procedural prohibition on the scope of the ADB's authority, the effect of this error was to shift responsibility for determining whether Plaintiff's civilian conviction qualified for separation from the ADB back to the Separation Authority.[16] The United States Supreme Court has indicated that error resulting in the wrong entity determining whether the burden of proof has been satisfied is not amenable to harmless error review. *See Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ("Similarly, harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution ... the error in such a case is that the wrong entity judged the defendant guilty.").

The second justification for not applying "harmless error" analysis is also present in this case, because the court cannot determine what the Assistant Secretary initially might have decided had he been advised of plain legal error in the ADB original finding, or what he would have decided based on a *de novo* review of Plaintiff's record. Accordingly, the ADB finding of misconduct and the Assistant Secretary's May 20, 1999 decision to separate for misconduct are not amenable to "harmless error" analysis because the magnitude of the error in this instance cannot be assessed. *See Doyle,* 220 Ct.Cl. 285 (1979) (recognizing the inability of a reviewing body to assess the magnitude of the error as justification for not applying harmless error analysis). Likewise, the import of the BCNR's failure to correct the ADB's "plain

16. *See supra* note 15.

17. Ordinarily, "[b]ecause no one has a right to enlist or reenlist in the armed forces unless specially granted one, an enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged." *Dodson,* 988 F.2d at 1208. In this case, however, the enlistment Plaintiff was serving when he was improperly separated would have resulted in a firm right to continued service under 10 U.S.C. § 1176(a). *See* 10 U.S.C. § 1176(a) ("A regular

legal error" on the Assistant Secretary's December 20, 2002 decision not to correct cannot be assessed.

The court, therefore, has determined that the legal error in this case is not amenable to harmless error analysis.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Administrative Record is **DENIED** and Plaintiff's Cross–Motion is **GRANTED.** The parties shall determine the appropriate amount of damages including back pay and retirement benefits due plaintiff by March 22, 2006, and shall file a stipulation with the court by that date.

At that time the court will enter a final order, pursuant to the congressional authorization in 28 U.S.C. § 1491(a)(2) to correct military records as "incident of and collateral to" an award of a money judgment, requiring that:

1. Plaintiff's Naval Record be corrected to show that Plaintiff was not discharged on February 3, 2000 but continued to serve without interruption on active duty.

2. Plaintiff's record be further corrected to show that on March 11, 1998, Plaintiff extended until the date he first became eligible for retirement, and that on such date he was transferred to the Fleet Reserve in the rate of GMG1.[17]

3. Any material or entries inconsistent with or relating to the court's judgment be corrected, removed or completely expunged from Plaintiff's record and that no such entries or material be added to the record at any time in the future.

enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within two years of ... of qualifying for transfer to the Fleet Reserve or Fleet Marine Corps Reserve under section 6330 of this title, shall be retained on active duty until the member is qualified for retirement or transfer to the Fleet Reserve or Fleet Marine Corps Reserve, as the case may be, unless the member is sooner retired or discharged under any other provision of law.").

4. Any material directed to be removed from Plaintiff's Naval Record be delivered to the BCNR, for retention in a confidential file maintained for such purpose, with no cross reference being made a part of Plaintiff's Naval Record.

Plaintiff may file a motion for attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(b).

**IT IS SO ORDERED.**